### HOLMAN v. ASHLEY.

1. CAUSE OF ACTION—LIABILITY OF SURETY—FRAUD.—A complaint states facts sufficient to constitute a cause of action for account and relief where plaintiffs allege that they are executors and beneficiaries under the will of a testator, who charged upon his legatees the support of a lunatic, whenever such lunatic's own estate proved insufficient to do so; that one A, as committee, had without authority expended a large portion of such lunatic's estate in the payment of costs and expenses of a lawsuit by him vexatiously instituted and prosecuted, and then died, and A's administrator and only heir, by collusion with the substituted committee, and with intent to throw the support of the lunatic on the estate of plaintiff's testator, had made a settlement whereby B received the remnant of the lunatic's estate in full discharge of A's liability; that A had no personal estate now existing, but left land which the widow and children of A's executor (now deceased) had inherited; that B had wasted the estate received by him, and he and his sureties were insolvent; that B had commenced action against plaintiffs to require them to raise money for the support of the lunatic by an assessment on the heirs of their testator's estate, as required by his will, which plaintiffs were willing to do if necessary, but that the lunatic's estate, properly accounted for, was sufficient for his support; and that an action requiring an account of A's and B's administration of the lunatic's estate would soon be barred by the statute of limitations—to which action B and the administrator *de bonis non* of A's estate, the heirs of A and of his executor and son, were parties defendant.

Before IZLAR, J., Barnwell, September, 1893.

Action by the executors and a legatee under the will of William Ashley, the elder, against L. A. Ashley, committee, and the administrator *de bonis non* and inheritors of the estate of Joseph Ashley.

*Messrs. Patterson & Holman* and *B. T. Rice*, for appellants.

*Messrs. Henderson Bros.*, contra.

February 23, 1894. The opinion of the court was delivered by

MR. JUSTICE POPE. The appeal raises but a single question : Was it error to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action? This demurrer, for the purposes thereof, admits as true all the

facts stated in the complaint, but denies that a cause of action is pleaded in such facts.

It scarcely need be stated that a cause of action exists when the rights of one party have been invaded by another; and unless facts, to show the existence and the invasion of those rights are stated in the complaint, it will be held bad on demurrer. *Chalmers* v. *Glenn*, 18 S. 'C., 469; *Suber* v. *Chandler*, *Ibid.*, 528. What rights of the plaintiffs do the allegations of the complaint show to exist, and which have been invaded by the defendants? The complaint is long, occupying nine pages of printed matter, and will not be reproduced in this opinion. Substantially it alleges: That in the year 1854, William Ashley, the younger, was duly declared a lunatic, and that in 1855, his father, William Ashley, the elder, was duly appointed the committee of his person and estate by the Court of Equity, and that the lunatic's estate consisted entirely of the sum of $2,000, derived from the estate of his grand-father, one Josiah Stallings, which estate passed into said committee's hands, who was authorized to expend the annual interest thereon ($140) to the lunatic's support and maintenance; that William Ashley, the father, performed the duties of committee to the date of his death, which occurred on the 2d February, 1879; that William Ashley, the father, died *testate*, leaving the plaintiffs, Holman and W. A. Bailey, executors, both of whom qualified, and that such executors paid to Joseph Ashley, who had been appointed by the Probate Court of Barnwell the committee of William Ashley, the younger, the sum of $2,070, as the estate of the said William Ashley, on the 22d August, 1879; that the said Joseph Ashley, out of malice and ill will, brought an action against the executors, plaintiffs, to recover the wages due a domestic servant or laborer from his father's estate in behalf of the lunatic son, claiming some $5,000 therefor, and by the decision of the Supreme Court such action was decided to be groundless; but that the said Joseph Ashley, without any order from the Court of Equity therefor, and otherwise, illegally expended $1,228.80 of his lunatic ward's estate for the costs and expenses of said action; that the said Joseph Ashley died *intestate*, leaving a considerable personal

estate and about 4,000 acres of land, and that his son, W. E. Ashley, who was his only heir at law, administered upon his estate, and possessed himself of the same, both real and personal; that W. E. Ashley, as administrator of Joseph Ashley, deceased, on the 16th April, 1887, paid to the defendant, L. A. Ashley, who had been previously appointed committee of William Ashley, the lunatic, the sum of $1,358.96, which he claimed was the full amount due by his father as committee, and which sum was accepted by the said L. A. Ashley as said committee as in full settlement, although both the said administrator, W. E. Ashley, and the said committee, L. A. Ashley, thereby fraudulently and collusively made such settlement with a view to destroy the estate of the lunatic, so that his support and maintenance might thereby be devolved upon the estate of William Ashley, the elder, under the tenth clause of his will; that on the —— day of October, 1888, the said W. E. Ashley died testate, by whose will the defendant, Carrie J. Ashley, was given his entire estate as life tenant, with the remainder vested in the defendants, Elmore and Joseph Ashley, who are both infants; that the defendant, L. A. Ashley. who is committee for the lunatic, is insolvent, and his bond as such committee is utterly worthless; that by the tenth clause of the will of plaintiff's testator, William Ashley, the elder, it is provided that if from any cause the estate of the lunatic derived from Josiah Stallings should prove insufficient for his proper support and maintenance, the executors, who are plaintiffs, should raise a sum sufficient for the support and maintenance of the said lunatic by a fair and equal assessment upon the property given to testator's children and grand children by his will, of which classes the plaintiffs are members; that the defendant, L. A. Ashley, has squandered that part of the lunatic's estate received by him; that the estate of Joseph Ashley still owes the estate of the lunatic, as principal and interest, $2,610.19; that the sum of $140 per annum had been sufficient for the maintenance and support of the lunatic during the twenty-five years his father managed his estate; that W. Gilmore Simms has been appointed administrator *de bonis non* of the estate of Joseph Ashley, deceased, whose personal estate is all gone, but his real

estate still remains in the hands of defendants, Carrie J. Ashley, Elmore and Joseph Ashley, for the payment of any debts due by Joseph Ashley, deceased; that in 1892, the said L. A. Ashley, as committee of the lunatic, instituted his action against the plaintiffs, as executors, &c., of William Ashley, the elder, to require them as executors to make an assessment upon the property derived under the will of William Ashley, the elder, by his children and grand-children, for the support and maintenance of the said William Ashley, the lunatic, alleging that all of the estate of said lunatic had been expended by his former committee, Joseph Ashley, and his present committee, L. A. Ashley; and alleging further that the executors of William Ashley, the elder, had declined to accede to his demand for the aforesaid assessment; that the present plaintiffs, as executors, are willing to levy the assessment to support and maintain the said lunatic whenever it is necessary to do so, but that the estate of said lunatic derived from Josiah Stallings, if collected, is ample for that purpose, and that Joseph Ashley, in his lifetime, was in collusion with the present committee, L. A. Ashley, when he squandered and dissipated the lunatic's estate. They further allege that the plaintiff, V. V. Holman, is a half-sister of the lunatic, William Ashley, there being no brother or sister of the whole blood, but that she and the defendant, L. A. Ashley, who is a son of a deceased brother of the whole blood of the lunatic, will be entitled, at the death of the lunatic, to inherit his whole estate, and that, therefore, she is interested in having the estate of the lunatic preserved; that this suit is necessary, because otherwise the statute of limitations will be a bar against any accounting by the estate of Joseph Ashley, deceased, other than that of April 16th, 1887, this suit having been instituted on the 19th September, 1892, within six years from the first date.

At first we were inclined to agree with the Circuit Judge that the facts stated in the complaint were defective, but a closer study of the complaint has led us to an opposite conclusion. Here is the crucial test, in our judgment: the executors of William Ashley, the elder, by the tenth clause of his will, were required to assess the property in the hands of testator's

children and grand-children, *whenever the lunatic's estate derived from his grand-father, Josiah Stallings, should prove insufficient for the lunatic's support and maintenance,* in order to provide such support and maintenance. Such estate in the hands of the committee, if honestly accounted for and applied, was sufficient for that purpose. These executors had paid over to the committee, Joseph Ashley, this estate. Joseph Ashley retained such estate in his hands during his lifetime intact, not even paying out the interest to his *cestui que trust.* When he died, his administrator colluded with L. A. Ashley in a pretended accounting for such lunatic's whole estate, paying out $1,358.96, leaving $1,892.59 of such estate still in the estate of Joseph Ashley, deceased—all this being done to so reduce the estate of the lunatic that the new committee might have an excuse to harrass the executors and pillage the estate of William Ashley, senior. It may be said that the estate of William Ashley, the elder, became a *quasi* surety to the committee for the support of the lunatic. Did not the executors have a right to have the Stallings fund honestly administered, to the end that the children and grand-children of William Ashley, the elder, should retain their property under his will freed from any assessments thereon to support and maintain the lunatic? This right was invaded when Joseph Ashley in his lifetime applied $1,228.86 *illegally* to costs and expenses of a vexatious lawsuit against his own father's estate, and this right was invaded by the pretensive settlement in April, 1887, between the administrator of Joseph Ashley with L. A. Ashley, as committee, validating and perpetuating the wrong done by Joseph Ashley, deceased, in his lifetime.

It would have been competent, from this standpoint, at any time after the illegal application of $1,228.80 of this lunatic's estate by Joseph Ashley to the costs and expenses of the lawsuit between Joseph Ashley and the executors of his father's estate, for the executors, plaintiffs, to have instituted an action to repair this wrong. Now that Joseph Ashley is dead, leaving an estate ample to repair this wrong, it is perfectly competent for these executors, plaintiffs, to bring this action against W. Gilmore Simms as his administrator *de bonis non* and the other

defendants, in order that the estate of Joseph Ashley, deceased, may pay the $2,610.19 due by his intestate's estate on the 16th October, 1892, to the estate of the lunatic. And we think the allegations of this complaint when properly construed warrant this conclusion. But it must be borne in mind that we are not passing upon the proof of the facts. As to that we express no opinion, because we have none. All that we mean to do is to consider these facts as admitted, for the time being, to test the sufficiency of the complaint under the demurrer.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the cause be remanded to the Circuit Court, with directions that defendants be allowed to answer if they apply therefor.